# Supreme Court of Texas

No. 23-0202

In re Jane Doe Cases

On Petition for Writ of Mandamus

**Argued October 1, 2024**

JUSTICE BLAND delivered the opinion of the Court.

Justice Huddle did not participate in the decision.

In this original proceeding, we examine the common-question requirement for multidistrict litigation joinder.[1] Relator Facebook, Inc.[2] challenges the transfer of its case into an existing MDL. None of the MDL cases names Facebook as a defendant; more generally, no party in the Facebook case is a party to another MDL case.

---

[1] Tex. Gov't Code § 74.162; Tex. R. Jud. Admin. 13.5(e),13.9(a).

[2] Facebook, Inc. is now known as Meta Platforms, Inc. The pleadings refer to both names; we use "Facebook" throughout for consistency. The MDL is styled *In re Jane Doe Cases*. Generally, original proceedings are styled in the name of the relator. Tex. R. App. P. 52.1. For ease of reference, we use the MDL case style to conform to the parties' briefing and the trial and MDL court orders under review.

The MDL pretrial court nevertheless denied Facebook's motion to remand, and the MDL panel declined to reverse that ruling. We conclude that the Facebook case lacks a fact question in common with the MDL cases, as Government Code Section 74.162 requires. Accordingly, we conditionally grant relief and direct the MDL panel to remand the tag-along case to its original trial court.

**I**

A human trafficker victimized real party in interest Jane Doe.[3] Doe alleges that the trafficker groomed her through a Facebook social media platform that lacked sufficient guardrails for access to minors' accounts. Using Facebook, the trafficker convinced Doe to meet with him in person. Within hours of these Facebook communications, the trafficker advertised Doe for prostitution on a social media website then known as Backpage. Backpage is unaffiliated with Facebook.[4] As a result of the trafficker's activities, Doe was sexually assaulted by multiple perpetrators. She alleges that the assaults occurred at the Texas Pearl Hotel in Houston.

Doe sued Facebook and Texas Pearl for violations of Civil Practice and Remedies Code Chapter 98. Chapter 98 authorizes the imposition

---

[3] We recite the facts as alleged in Doe's amended petition.

[4] Backpage ceased doing business after the Department of Justice seized its assets. Press Release, Dep't of Just., Justice Department Leads Effort to Seize Backpage.Com, the Internet's Leading Forum for Prostitution Ads, and Obtains 93-Count Federal Indictment (Apr. 9, 2018), https://www.justice.gov/opa/pr/justice-department-leads-effort-seize-backpagecom-internet-s-leading-forum-prostitution-ads. Doe nonsuited Backpage and its principals from her suit in late 2019 and early 2020.

of civil liability against those who intentionally or knowingly benefit from human trafficking.[5] Our Court examined Chapter 98 and its relationship to the claims in this case in an earlier proceeding.[6]

More than three years after Doe sued Facebook and Texas Pearl, Texas Pearl filed a "Notice of Transfer of Tag-Along Case." Doe joined in Texas Pearl's request.[7] The notice removed Doe's case into an existing MDL composed of cases with plaintiffs who also allege claims arising from human trafficking. The MDL cases name various hotels and Salesforce, a provider of customer-relationship management software, as defendants. The MDL plaintiffs generally allege that Salesforce sold software to Backpage that facilitated Backpage's involvement in human trafficking and that Salesforce failed to take steps to prevent Backpage from using Salesforce's software for illegal purposes. The MDL plaintiffs further allege that the hotel defendants facilitated trafficking on their respective premises. No MDL plaintiff names Facebook or Texas Pearl, or any entity affiliated with them, as a defendant.

Facebook objected to the transfer and moved to remand. Facebook contended that its case has no question of fact in common with the MDL cases. It observed that the MDL cases allege conduct occurring at

---

[5] *See* Tex. Civ. Prac. & Rem. Code § 98.002(a) ("A defendant who engages in the trafficking of persons or who intentionally or knowingly benefits from participating in a venture that traffics another person is liable to the person trafficked . . . .").

[6] *In re Facebook, Inc.*, 625 S.W.3d 80, 83 (Tex. 2021) (holding that the Communications Decency Act, 47 U.S.C. § 230(c), does not bar Doe's claims alleging that Facebook's affirmative acts violated Chapter 98).

[7] Texas Pearl is a real party in interest here and joins Doe's responses to Facebook's request for relief.

3

different times and locations and involving different defendants, plaintiffs, and criminal perpetrators.

The MDL pretrial court denied Facebook's motion to remand, and the MDL panel denied Facebook's motion for rehearing. Invoking Rule of Judicial Administration 13.9(a), Facebook seeks relief in this Court through this original proceeding.[8]

## II

### A

In 2003, the Texas Legislature authorized the Supreme Court to adopt rules relating to multidistrict litigation.[9] The rules advance laws adopted in Government Code Sections 74.161 through 74.164. These sections establish the criteria for creating an MDL pretrial court. Section 74.162 tasks the MDL panel with consolidating pretrial proceedings for cases that share "common questions of fact" if consolidation will "promote the just and efficient conduct" of the litigation and further "the convenience of the parties and witnesses."[10]

---

[8] *See* Tex. R. Jud. Admin. 13.9(a) ("An order of the MDL Panel, including one granting or denying a motion for transfer, may be reviewed only by the Supreme Court in an original proceeding.").

[9] Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 3.01, 2003 Tex. Gen. Laws 847, 852 (codified at Tex. Gov't Code § 74.024(c)(10)).

[10] Tex. Gov't Code § 74.162 ("[T]he judicial panel on multidistrict litigation may transfer civil actions involving one or more common questions of fact . . . to any district court for consolidated or coordinated pretrial proceedings, including summary judgment or other dispositive motions, but not for trial on the merits. A transfer may be made by the judicial panel on multidistrict litigation on its determination that the transfer will: (1) be for the convenience of the parties and witnesses; and (2) promote the just and efficient

4

Pursuant to this legislative mandate, our Court promulgated Rule of Judicial Administration 13, creating a multidistrict litigation panel.[11] The panel consists of five "active, former, or retired court of appeals justices or active administrative judges" who are "designated from time to time by the supreme court."[12] The MDL panel may assign "any active district judge, or any former or retired district or appellate judge" this Court's Chief Justice has approved to be an MDL pretrial judge.[13]

To form an MDL, one or more parties apply to the MDL panel, seeking common management for discovery, scheduling, and pretrial dispositive motions of a collection of cases.[14] The MDL panel must conclude that the cases involve "one or more common questions of fact."[15] If common fact questions exist, then the panel must decide whether transfer into an MDL will "(1) be for the convenience of the parties and witnesses; and (2) promote the just and efficient conduct of the

---

conduct of the actions."). *See also* Zachary D. Clopton & D. Theodore Rave, *MDL in the States*, 115 Nw. L. Rev. 1649, 1686–87 (2021) (discussing the history of the MDL statute and rules in Texas).

[11] Tex. R. Jud. Admin. 13.

[12] Tex. Gov't Code § 74.161(a).

[13] Tex. R. Jud. Admin. 13.6(a).

[14] *See id.* R. 13.3.

[15] Tex. Gov't Code § 74.162.

actions."[16] A party may challenge the formation of an MDL through an original proceeding, petitioning for relief in this Court.[17]

The Rules of Judicial Administration permit a party to "tag" an individual case to become a part of an existing MDL collection.[18] The common-question, convenience, and efficiency requirements apply to the later inclusion of tag-along cases. An improperly tagged case would cause the MDL to fail to comply with Section 74.162's requirements.[19]

A tag-along transfer happens automatically upon a party's filing of a notice of removal into an MDL.[20] A party opposing the transfer, however, may ask the MDL pretrial court to remand the tagged case to its original trial court.[21] As with the creation of an initial MDL collection, a party dissatisfied with the MDL pretrial court's remand

---

[16] *Id.*

[17] Tex. R. Jud. Admin. 13.9(a).

[18] *Id.* R. 13.5(e) ("A tag-along case is deemed transferred to the pretrial court when a notice of transfer—in the form described in Rule 13.5(a)—is filed in both the trial court and the pretrial court."); *id.* R. 13.2(g) ("*Tag-along case* means a case related to cases in an MDL transfer order but not itself the subject of an initial MDL motion or order.").

[19] *See* Tex. Gov't Code § 74.162; Tex. R. Jud. Admin. 13.1(b)(1).

[20] Tex. R. Jud. Admin. 13.5(e).

[21] *Id.* ("Within 30 days after service of the notice, a party to the case or to any of the related cases already transferred to the pretrial court may move the pretrial court to remand the case to the trial court on the ground that it is not a tag-along case.").

6

ruling may seek review of that decision before the MDL panel and, in turn, request relief through an original proceeding in this Court.[22]

Similar to other kinds of joinder practice, we evaluate the panel's decision to retain a tag-along case for an abuse of discretion.[23] Not unlike the statutory common-question requirement for MDLs, Texas Rule of Civil Procedure 40 allows permissive joinder of parties who assert claims "arising out of the same transaction, occurrence, or series of transactions or occurrences" if "any question of law or fact common to all [claims] will arise in the action."[24] Failure to apply a statutory requirement is a basis for relief from improper joinder because trial courts have no discretion to improperly interpret the law.[25]

## B

A party may tag a case into an existing MDL proceeding when the tag-along case shares one or more common questions of fact with others in the MDL.[26] Doe contends that a common pattern of criminal conduct—human trafficking promoted through internet

---

[22] *See id.* ("The order of the pretrial court may be appealed to the MDL Panel by a motion for rehearing filed with the MDL Panel Clerk."); *id* R. 13.9(a) ("An order of the MDL Panel, including one granting or denying a motion for transfer, may be reviewed only by the Supreme Court in an original proceeding.").

[23] *See Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 910–11 (Tex. 2017) ("We review a trial court's rulings on issues concerning joinder of parties for an abuse of discretion.").

[24] Tex. R. Civ. P. 40.

[25] *See In re Chefs' Produce of Hous., Inc.*, 667 S.W.3d 297, 300 (Tex. 2023).

[26] Tex. R. Jud. Admin. 13.2(f).

7

communications—suffices to establish this requirement. The plaintiffs in the MDL and the tag-along case are sex-trafficking victims alleged to have been criminally exploited through Backpage at various Texas hotels. Doe further contends that Backpage's website and industry standards designed to prevent sex trafficking will be common areas of discovery.

As it did in the MDL courts, Facebook responds that it is not a party to any MDL case, and neither is Texas Pearl or Doe. As a result, the tag-along case shares no common question of fact with an MDL case, including whether Facebook or Texas Pearl intended or had knowledge of Doe's exploitation. Though evidence of industry standards and the activity of an unnamed third party like Backpage may be relevant, the application of this evidence to any fact question will be different because none of the criminal activity alleged in the MDL involves either Facebook or Texas Pearl.

We agree with Facebook that the tag-along case shares no fact question in common with the MDL group. At a general level, the cases involve criminal exploitation of minors that took place at Texas hotels through the use of social media. There, however, the commonality ends. The suits name different defendants and allege different conduct by different criminal perpetrators. The MDL does not involve an affiliated hotel. It does not involve similar incidents of trafficking, premises, time periods, or fact witnesses. Without connection through common plaintiffs, defendants, or events, allegations of general patterns of criminal activity by different perpetrators do not create the required

8

common fact question to include a case within an MDL for pretrial docket management.

Doe points to discovery of industry policies that may be associated with the standard of care for Texas hotels generally, and she observes that each defendant was involved in a sex-trafficking scheme resulting in similar monetary benefits. Such evidence does not present a common fact question absent either common parties or the same alleged events. A hotel industry standard may be relevant evidence, but it does not present a common fact issue that resolves a given hotel owner's duty or breach, particularly under Chapter 98, which requires an intentional or knowing benefit from the trafficking in question.[27]

Our holding aligns with the federal courts, which similarly require the cases in an MDL group to share a common issue of fact.[28] For example, in *In re Hotel Industry Sex Trafficking Litigation*,[29] the federal MDL panel refused to centralize twenty-one sex-trafficking cases that lacked sufficiently overlapping parties.[30] The panel held the "lack of common factual questions" precluded MDL case management.[31]

To counter, Doe points to Backpage and suggests that it is a common actor whose conduct is implicated in each of the cases. Though

---

[27] *See* Tex. Civ. Prac. & Rem. Code § 98.002(a).

[28] *Compare* Tex. Gov't Code § 74.162, with 28 U.S.C. § 1407 (both requiring "one or more common questions of fact" and promotion of the "just and efficient conduct" of the actions before forming an MDL grouping).

[29] 433 F. Supp. 3d 1353 (J.P.M.L. 2020).

[30] *Id.* at 1354–56.

[31] *Id.* at 1356.

the allegations against Backpage provide important context, they do not support a Chapter 98 claim in the tag-along case because Chapter 98 requires proof that Facebook and Texas Pearl intentionally or knowingly benefitted from Doe's criminal exploitation.[32] Unlike the MDL cases against Salesforce, Doe alleges no contractual or other legal relationship between Facebook or Texas Pearl and Backpage. The conduct of an actor who is not a party to any case—tag-along or MDL—and whose conduct is not linked to Facebook's or Texas Pearl's liability does not present a common question.

Finally, Doe points to *In re Silica Products Liability Litigation*[33] to support the transfer.[34] She argues that the adequacy of the hotels' efforts to identify and prevent human trafficking at their properties presents a common mixed question of fact and law. *Silica*, however, involved "many common defendants and common products, all involving silica in some way."[35] Unlike the defendant-specific Chapter 98 claims alleged against Facebook in the tag-along case, the failure-to-warn claim in *Silica* presented common questions involving the warnings multiple plaintiffs received from the same defendants for the same product. No such commonality is alleged between Facebook and Salesforce, nor between Texas Pearl and the other hotels.

---

[32] *See* Tex. Civ. Prac. & Rem. Code § 98.002(a).

[33] 166 S.W.3d 3 (Tex. M.D.L. Panel 2004).

[34] *See id.* at 6 ("Rule 13 . . . extends to mixed questions of law and fact, such as product defect . . . .").

[35] *Id.*

In addition to its challenge to the lack of a common question, Facebook urges that MDL treatment for its case fails to meet Section 74.162's efficiency and convenience requirements. We need not address this issue, given that we agree that the case must be remanded due to lack of commonality with the cases collected in the existing MDL.

\*     \*     \*

The Government Code requires an MDL collection to share a common fact question. It was error to deny remand of a tag-along case lacking such a question. We conditionally grant mandamus relief and direct the MDL panel to remand the tag-along case to its original trial court.

Jane N. Bland
Justice

**OPINION DELIVERED:** December 31, 2024

11